This is a suit by appellant to recover damages for personal injuries, growing out of an alleged breach of contract which appellant claims to have been made by him with appellee relating to his right of passage on one of its freight trains from Dodge to New Waverly, stations on its road. He predicates his right to recover upon the following facts: While at his work at Oakhurst, on the afternoon of December 13, 1904, he received a message stating that his sister was at the point of death and his baby was very sick; whereupon he immediately quit his work and walked to the station of Dodge, arriving there about 9 o'clock on said evening, where he made inquiry of one Roark, a clerk in appellee's ticket office, relative to the time of the arrival of a passenger train going to New Waverly that night; said clerk told him that it would pass a little after one o'clock, and while making this statement to appellant the south-bound freight train stopped at the depot, whereupon appellant told said clerk that if he were allowed to take passage on said freight train he would save several hours; Roark replied that appellant would have to see the conductor, and they immediately went out together for this purpose, but appellant walked up to a brakeman, and Roark passed on. The brakeman then agreed with appellant to transport him to New Waverly for fifty cents, which, having been paid by appellant, he, at the instance of the brakeman, boarded the train, climbing by means of a ladder inside of a coal car, in which he rode. It was shown that the conductor of the train knew nothing about this contract and told Roark that the train would not stop at New Waverly that night, which statement was probably heard by the appellant. The train did not stop at New Waverly, but continued on to Willis, where appellant voluntarily jumped from the train while the same was in motion. According to his own statement it was running at this time from ten to fifteen miles per hour, and he, while attempting to alight therefrom, was thrown under the wheels of the car, both legs being so badly crushed as to necessitate amputation. It was shown that appellant had never seen *Page 598 
the conductor in charge of this train, nor did he see the brakeman during the time he was riding thereon, nor was he seen by any of the operatives on said train from Dodge to New Waverly, the sides of the coal car in which he was riding reaching up to his neck, and being somewhere about the middle of the train.
Appellant alleges that, on account of the breach of its contract to stop at New Waverly, he was required to choose between two evils, either to remain on the train and suffer great mental anguish on account of being carried beyond the station where his relatives were ill, or to jump therefrom as he did.
Appellee answered by general and special exceptions, general denial, contributory negligence, and pleaded that by its rules, which had been duly adopted and promulgated, prohibiting passengers from riding upon freight trains, its brakemen and operatives had no authority to permit passengers to ride upon said trains, and such authority could only be granted by the general officers of the company, and that no such consent had been given in the present case, and that the alleged contract relied upon for recovery by appellant, between himself and the brakeman, was not within the scope of his authority, and that no brakeman had any control over the movements of its trains. Wherefore, it was not liable for any injuries resulting from a breach of said alleged contract.
The evidence, in addition to what has been stated, showed the establishment and promulgation of such rule and the continuous enforcement thereof for many years on the part of the officials and operatives of said company.
The trial court, after hearing the evidence, instructed the jury to return a verdict for appellee, which was done, from which judgment this appeal is prosecuted.
The chief contention in this case on the part of appellant is that the court erred in instructing a verdict in behalf of appellee. In view of the uncontradicted evidence in this case, which shows that appellant's right to ride upon said train was based upon the contract made by him with the brakeman, who under the evidence had no authority to make such contract or grant said permission to ride, and it further appearing that the rules of the company, which had been duly made and promulgated, forbade passengers from riding upon its freight trains, which rule could not be suspended except by the superior officers of the company, which is not shown to have been done in this case, we are clearly of the opinion that the action of the trial court in directing a verdict in favor of the company was correct.
Justice Brown, speaking for the court, in Texas Pac. Ry. Co. v. Black, 87 Tex. 160, says: "A railroad company has the right to carry passengers and freight by different trains, and when such provision is made the conductors and brakemen have no implied authority to receive passengers upon freight trains; it is not within the scope of their authority. When one gets upon a freight train, made up exclusively of cars appropriate alone to the carrying of freight and the employes on such train, he must take notice of the fact that the train is not provided for passengers."
In the case of Galaviz v. International G. N. R. R. Co., 15 Texas Civ. App. 61[15 Tex. Civ. App. 61], wherein the plaintiff sued for damages for injuries caused *Page 599 
by being unlawfully compelled to disembark from a moving freight train by a brakeman, he having alleged and testified that the brakeman made a contract with him by which he obtained permission to ride on said train from Taylor to San Marcos, and that when the train was nearing San Marcos the brakeman unlawfully compelled him to get off the train while it was in motion, and, while attempting to do so, his foot was caught between the cars and was injured. There being no evidence tending to show any misconduct or negligence on the part of anyone connected with the train except the brakeman, and it having been shown that the defendant promulgated and continuously enforced for a number of years a rule prohibiting all persons except its employes from riding on freight trains, and that conductors had no power to suspend said rule, it was held, Justice Key delivering the opinion, "that a person riding on a freight train by permission of a brakeman, contrary to the rules, could not recover for personal injuries sustained in getting off the train while in motion." The same doctrine is held in San Antonio A. P. Ry. Co. v. Lynch, 8 Texas Civ. App. 513[8 Tex. Civ. App. 513]; International G. N. Ry. Co. v. Hanna,58 S.W. 548; Grahn v. International G. N. Ry., 100 Tex. 27; Cockrell v. Texas N. O. Ry., 36 Texas Civ. App. 559[36 Tex. Civ. App. 559]; International G. N. Ry. Co. v. Anderson, 82 Tex. 516.
By the remaining assignments appellant contends that the court erred in refusing to permit him to file a trial amendment setting up that the train, at the time he alighted therefrom, was running at about six miles an hour, he having theretofore alleged in his pleading that the train was running from ten to fifteen miles an hour, basing his right to amend upon the fact that he did not know how fast said train was running, and the statement of appellee's engineer, who testified upon the trial that the train upon which appellant was traveling, when his injuries were received while passing through Willis, was moving at the rate of six miles an hour. The court, in explanation of appellant's bill of exception upon this subject, stated that permission to amend was denied because this evidence was only based upon the opinion of said engineer, and was given about the conclusion of the trial.
While it has been held by our Supreme Court that the right to amend the pleadings exists at any time before the conclusion of the trial, still these matters are confided largely to the discretion of the trial judge; and, unless this discretion is abused, it is not ground for reversal. In the present case we can not see how appellant was prejudiced by reason of the refusal of the court to grant him the right to so amend, because, under any view of the facts as presented in the record, appellant was not, and could not be, entitled to recover. Therefore, if there had been error in refusing to permit him to amend, the same was harmless under the facts disclosed by the record.
Believing that no error has been shown in the action of the trial court, the judgment of the court below is in all things affirmed.
Affirmed. *Page 600