## J. M. FORD v. HOUSTON & TEXAS CENTRAL RAILROAD COMPANY.

### Decided January 15, 1910.

**1.—Nonsuit—Practice.**

When a plaintiff is surprised by a ruling of the trial court which practically prevents a recovery by him, he is not compelled to proceed with the trial, but may take a nonsuit and may then move to set aside the nonsuit and re-instate the case, and if the action of the court necessitating such course be erroneous and the motion to reinstate be overruled, its judgment may be revised on appeal; if the ruling of the court is not erroneous the motion to reinstate is addressed to the discretion of the court and its refusal is not error.

**2.—Same.**

Where a trial judge announces after the evidence is all in that he would instruct a verdict for the defendant because of the insufficiency of the evidence to show liability of the defendant, and the plaintiff thereupon takes a nonsuit, the effect is the same as if the court had instructed such verdict; and the fact that the nonsuit was voluntary on the part of the plaintiff would not prevent him from appealing from the judgment of the court in overruling his motion to re-instate.

**3.—Same—Motion to Reinstate.**

, Where the court could properly have instructed a verdict for defendant because of the insufficiency of the evidence in plaintiff's favor and the plaintiff took a nonsuit upon the announcement by the court that it would instruct such verdict, there was no error in overruling a motion to reinstate in the absence of a showing that plaintiff could and would make a stronger case upon another trial.

**4.—Frightened Horses—Locomotive—Liability.**

Plaintiff's horses became frightened at the noise made by steam escaping from a locomotive standing in the yard of a railroad company; the horses ran away, threw plaintiff out and injured him; the engine was not standing near a street or public road, but was near a passway which plaintiff was using as a licensee; the noise made by the escaping steam was not more than that usually made in such cases and was reasonably incident to the safe and proper management of the engine. Held, defendant was not liable for the frightening of the team and the consequent injury to plaintiff.

**5.—Railroad Companies—Right to Operate Engines.**

Railroad companies may, without subjecting themselves to the charge of negligence for so doing, make such noises with their engines as are necessarily incident to their safe operation, and one who drives a team in close proximity thereto can not complain if the team becomes frightened.

**6.—Same—Cases Distinguished.**

Missouri, K. & T. Ry. Co. v. Traub, 19 Texas Civ. App., 125, and Texas Midland Ry. Co. v. Cardwell, 67 S. W., 157, distinguished.

**7.—Same—Contributory Negligence.**

Where it appeared plaintiff knew that in driving along a railroad right of way on a road that was not a public road he would be exposed to dangers from the engines and trains; that he could have avoided the dangers by a slight inconvenience but voluntarily assumed the hazard, he will be precluded from recovering for any injury resulting from the frightening of his team by the engines or cars, because of a failure to exercise ordinary care for his own safety.

Appeal from the District Court of Limestone County. Tried below before Hon. H. B. Daviss.

*A. B. Rennolds,* for appellant.—In a suit against a railroad corporation to recover damages for personal injuries alleged to have been sustained by reason of negligence on the part of defendant or its employes, where the court overrules defendant's exceptions to plaintiff's petition and where the petition states a good cause of action, and the evidence tends to prove the material issues raised by the pleading, it is error for the court to refuse to submit such issues to the jury and to instruct the jury to find for the defendant over the objection of the plaintiff. Fitzgerald v. Hart, 23 S. W., 933; Johnson v. Drought, 22 S. W., 290; Ellis v. Rosenberg, 29 S. W., 519.

In a suit of this kind where, under proper allegations, the evidence shows that defendant railroad company knowingly allowed one of its engines to remain at or near a much-traveled road or passway on its right of way which it has permitted the public to use for travel for twenty years, without attendants and with steam up, knowing that such engine was liable to blow off steam and thus cause a loud and startling noise, calculated to frighten animals driven over such passway, the issue of negligence is raised and should be submitted to the jury. Texas Midland R. R. Co. v. Cardwell, 67 S. W., 157; Missouri, K. & T. Ry. Co. v. Traub, 19 Texas Civ. App., 125; Missouri, K. & T. Ry. Co. v. Jones, 13 Texas Civ. App., 376; Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Texas, 152.

Where the issue of negligence is raised in a suit of this kind by the pleading; and plaintiff's evidence tends to support the averments of his petition, and defendant introduces evidence to show that it was necessary to leave the engine with steam up at the place where it was left, and that the noise made by the escaping steam was not an unusual noise and not an unnecessary noise, the questions of whether it was necessary to leave the engine with steam up at such place, and whether the noise was an unusual noise, should be submitted to the jury in order that the jury may determine whether defendant was guilty of negligence or not. Potter v. Wheat, 53 Texas, 401; Supreme Council of the A. L. of H. v. Anderson, 61 Texas, 296; Newberger v. Heintze, 3 Texas Civ. App., 259.

The court erred in not reinstating the cause in accordance with appellant's motion, because the court having announced that the jury would be instructed to find for the defendant, appellant had the right to take a nonsuit and to have the cause reinstated on the docket. Lockett v. Ft. Worth & R. G. Ry. Co., 78 Texas, 211.

*Baker, Botts, Parker & Garwood, O. L. Stribling* and *Williams & Bradley,* for appellee.

TALBOT, Associate Justice.—Appellant Ford sued the appellee to recover damages for personal injuries alleged to have been received by him through the negligence of appellee in permitting steam to escape from one of its engines left standing unattended on a sidetrack in its yards at the town of Mexia, near "a public way of travel on defendant's right of way," which frightened appellant's mules drawing a wagon in which he was riding, causing said mules to run away and throw appellant from the wagon and injure him. The

defendant plead general and special demurrers, which were by the court overruled, a general denial and contributory negligence. A jury was empaneled, the evidence introduced, and the attorney for the plaintiff made the opening argument; whereupon the court announced, in the presence and hearing of the jury, "that he did not believe that under the pleadings and proof there was liability in damages to plaintiff shown against defendant railroad company, and that the court would peremptorily instruct the jury to find for the defendant," and this the court would have done, as shown by bill of exceptions, but for the fact that counsel for plaintiff, upon the court's announcement as stated, made a motion that plaintiff be permitted to take a nonsuit, which motion was granted and the cause dismissed. The plaintiff excepted to the court's action in announcing that he would instruct a verdict for the defendant, and in refusing to submit the issues of fact as insisted upon by him for the determination of the jury, and in due time filed a motion to reinstate his case. This motion was overruled and from the ruling of the court the plaintiff appealed.

Appellee moves this court to dismiss the appellant's appeal and strike the case from the docket of the court because, as claimed, this court is without jurisdiction to try and determine the appeal for the reason that the nonsuit taken by appellant in the District Court was voluntary and not taken under such coercion as entitles him to an appeal from such judgment.

We think the action of the court in announcing that appellant had failed to show any liability on the part of appellee for the alleged injuries sustained by him, and that he would instruct a verdict for the appellee, was practically the same as if such direction had been given before appellant took a nonsuit; and, after such action of the court, it was not obligatory upon appellant, in order to avail himself of the right of appeal, to permit a verdict to go against him. We understand the rule to be in this State that when the plaintiff is surprised by a ruling of the court which practically prevents a recovery by him, he is not compelled to proceed with the trial, but may take a nonsuit, and may then move to set aside the nonsuit and reinstate the case; and if the action of the court necessitating such course be erroneous and the motion to reinstate is overruled, its judgment may be revised on appeal; if the ruling of the court is not erroneous the motion to reinstate is addressed to the discretion of the court and its refusal is not error. (Huston v. Berry, 3 Texas, 235; Easterling v. Blythe, 7 Texas, 210; Osborne v. Scott, 13 Texas, 59; Lockett v. Ft. Worth & R. G. Ry. Co., 78 Texas, 211.)

We are of the opinion the court did not err in refusing to reinstate appellant's cause for the reason that the evidence was insufficient to authorize a finding by the jury that appellee was responsible for the accident resulting in the injuries of which appellant complains. The petition stated a good cause of action, and appellee's demurrers were therefore properly overruled, but the evidence fails to raise an issue of fact upon the ground of negligence alleged upon which a recovery is sought to be had. It is not claimed that an unusual quantity of steam escaped from the engine and caused the team to become fright-

ened, but that the team became frightened at the noise made thereby. It appears that appellee's locomotive engine from which it is alleged the steam escaped, causing appellant's mules to take fright, was standing on one of its tracks in the railroad yards in the town of Mexia, not very far from a traveled way, which had been used by the people for many years, along the railroad right of way, but not near a public street or street crossing of said city; that the noise made by the escape of steam from said engine at the time appellant's mules became frightened and ran away was about as loud as is usually made by the escape of steam from an engine. Appellant testified: "On the right hand side of the road that I went down was a small building that was used for a hotel; right south of that was the Rotan Grocery house. . . . As I was coming down that road, when I got about even with the Rotan Grocery house, the engine that was standing on the track there popped off steam. The engine made about the usual noise that engines make when they pop off steam. The engine that I was looking at was the one that popped off steam. I was not quite opposite the engine when it popped off steam. I do not know exactly how far this road that I traveled down was from the engine—it was about sixty or eighty feet. I have been going to Mexia for the last twenty years. I have been across the depot grounds frequently. When the steam popped off in that engine standing there my team began to run. I could not tell you exactly the kind of noise that engine made. It was a loud noise, just about the usual noise an engine generally makes when the steam escapes and pops off. I could not describe the kind of racket that it made, except that it popped off steam. I could not tell you exactly the kind of noise the engine made when it popped off steam. It was pretty loud; about as loud as an engine generally makes when the steam escapes through automatic pop valves. Everybody in this country has heard them, but I could not just describe the noise they make. Nearly everyone in this country has heard the racket they always make." Then he was asked: "Did the engine make that noise when it was standing there? Was it unusually loud in that respect?" To which he answered, "Yes, sir."

On cross-examination plaintiff testified: "I suppose I was somewhere between sixty and eighty feet from it when it first popped off steam. I stated on direct examination this morning that the noise this engine was making was the usual noise engines make in popping off steam. That is as near as I can describe it. It certainly was the ordinary and usual noise that everybody has heard engines make when popping off steam. There was nothing unusual about that." This is all the testimony in the record relative to the character of noise made by the engine when it popped off steam; and the answer, "yes," made by the plaintiff to the two questions: "Did the engine make that noise when it was standing there?" "Was it unusually loud in that respect?" was evidently intended as an affirmative answer to the first of said questions. This is made certain by the subsequent positive statement of the witness in which he declares, "It certainly was the ordinary and usual noise that everybody has heard engines

make when popping off steam. There was nothing unusual about that."

The grounds of appellant's motion to reinstate are, in substance, simply that the evidence was sufficient to require the submission of his case to the jury, and therefore the trial court erred in failing to so submit it upon proper instruction, applying the law to the facts. No claim or showing was made that his case could be strengthened on another trial, and from the testimony adduced, we think it conclusively appears that the noise created by the escape of steam from appellee's engine at which appellant's mules took fright, was no more than the usual and ordinary noise that an engine makes when steam escapes therefrom, and such only as is reasonably incident to its safe and proper management. This being true, liability can not be predicated upon the fright taken by appellant's mules at such noise, and appellant having failed to show that testimony existed which he could probably procure upon another trial, and which would authorize a verdict against appellee in his favor, his motion to reinstate was properly refused. It is well settled that railway companies may, without subjecting themselves to the charge of negligence for so doing, make such noises with their engines as are necessarily incident to their safe operation, and that one who approaches in close proximity thereto has no right to assume that it will remain quiet, and if such assumption is indulged and the team driven becomes frightened at such noise, the person injured thereby will not be heard to complain. In such case it is said that "liability would no more grow out of fright created by such a cause than could liability be predicated upon fright proceeding from the ordinary appearance of a locomotive in the absence of noise." (San Antonio & A. P. Ry. Co. v. Belt, 24 Texas Civ. App., 281.)

In support of his contention that the facts shown were sufficient to warrant a finding of negligence and consequent liability on appellee's part, appellant has cited the cases of Missouri, K. & T. Ry. Co. v. Traub, 19 Texas Civ. App., 125, and Texas M. Ry. Co. v. Cardwell, 67 S. W., 157, decided by this court; but the case at bar is easily distinguished from those cases, in that, in each of them the engine was at or near a street or public road crossing and the noise made by the escape of steam was unusual. In this case the engine was not at or near such a crossing, and the undisputed evidence shows that the noise made by it was the usual noise and necessarily incident to its safe management. At most, the engine was left near a passway on appellee's right of way commonly used by the public with its acquiescence or consent, and appellant in driving along this way was a mere licensee.

There is another reason, we think, why the court was authorized to instruct a verdict for the defendant in this case, and therefore did not err in refusing to reinstate the same on the showing made by appellant therefor. It is manifest from appellant's testimony that he knew the way traveled by him along appellee's right of way was dangerous, and it is fairly inferable therefrom that there was another or other ways by which the cotton yard in the town of Mexia, and to which he was going, could have been reached without incurring the

risk of having his team frightened by noises made by appellee's engines or trains. In speaking of driving along appellee's right of way he says: "I did take chances on getting through there; I thought I could get through all right. I did not know of any other street and crossing, and, of course, I had to risk some chances in going through there. I could have gone clear around, but I went through there because it was a little nearer. I had gone through there before." Appellant did not have an absolute right, as one passing over a street or public road crossing, to drive along appellee's right of way, but simply a permission or license to do so. In Gulf, C. & S. F. Ry. Co. v. Matthews, 100 Texas, 63, our Supreme Court, in speaking of the principle as applied to persons walking along a railroad track, when the same was so generally used that it might be deemed that they had a license to use the track for the purpose of a foot passage, said: "An implied permission, such as is claimed, to use a railroad track as a footpath may relieve the person enjoying it of the imputation of being a trespasser, but it does not relieve the place of its inherent dangers, nor exempt the traveler from the duty to act with ordinary prudence. When he voluntarily chooses the dangerous pathway instead of a safe one beside it, we can see no escape from the conclusion that he is guilty of negligence, if there be no justifying or excusing circumstances."

It would seem that this doctrine is peculiarly applicable to the facts of this case. Appellant, according to his own testimony, knew that in driving along appellee's right of way he would be exposed to danger; that he could have avoided such danger by slight inconvenience, but he did not choose to do it. On the contrary, he voluntarily assumed the hazard of going along appellee's right of way near its engines and trains, knowing that it was usual for steam to escape from the engines, making just such noise as frightened his mules on the occasion in question; therefore, the injury received by him as the result of such noise must be attributed to his failure to exercise ordinary care for his own safety, which precludes a recovery. (Texas Midland Ry. Co. v. Byrd, 102 Texas, 263; St. Louis & S. F. Ry. Co. v. Mathis, 101 Texas, 342.)

The views expressed dispose of the whole case, and assignments relating to the court's refusal to give certain charges need not be discussed. The judgment of the court below is affirmed.

*Affirmed.*