1. CRIMINAL LAW (§ 1092*)—APPEAL AND ERROR—STATEMENT OF FACTS AND BILL OF EXCEPTIONS—APPROVAL AND VERIFICATION.

A statement of facts and bill of exceptions, not approved and verified by the county judge who heard the cause, is invalid on appeal.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2836; Dec. Dig. § 1092.*]

2. PHYSICIANS AND SURGEONS (§ 6*)—PRACTICING WITHOUT AUTHORITY—INDICTMENT—SUFFICIENCY.

Under Acts 30th Leg. c. 123, § 4, and subdivision 2 of section 13, defining and regulating the practice of medicine, an indictment charging the defendant with unlawfully practicing medicine, without having properly registered his authority for so doing, and treating and offering to treat physical disease and disorder, and making a charge therefor, is sufficient.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 9; Dec. Dig. § 6.*]

3. CRIMINAL LAW (§ 1144*)—APPEAL AND ERROR — STATEMENT OF FACTS—PRESUMPTIONS IN ABSENCE OF.

In the absence of a statement of facts, if the charge of the court is applicable to any state of facts that might be proven under the allegations, the Supreme Court will assume that the county court properly submitted the law of the case.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3032; Dec. Dig. § 1144.*]

Appeal from Cooke County Court; C. R. Pearman, Judge.

Henry Young was indicted for unlawfully practicing medicine, and he appeals. Affirmed.

See, also, 128 S. W. 1103.

Henry Young, pro se. C. E. Lane, Asst. Atty. Gen., for the State.

HARPER, J. The appellant was indicted by the grand jury of Cooke county for unlawfully practicing medicine, without having properly registered his authority for so doing, and treating and offering to treat physical disease and disorder, and making a charge therefor. The cause was transferred to the county court, and upon a trial he was adjudged guilty, and his punishment assessed at a fine of $200 and 60 days' confinement in jail.

1. The Assistant Attorney General files a motion to strike out the statement of facts and bills of exceptions herein filed, because they, nor either of them, are not approved and verified by the county judge. To be of any validity whatever, the statement of facts and bills of exceptions must be approved and signed by the judge. Lawrence v. State, 7 Tex. App. 192; Bennett v. State, 16 Tex. App. 236; Johnson v. State, 29 Tex. 492; Moss v. State, 39 Tex. Cr. R. 3, 43 S. W. 983, 44 S. W. 832; Rushing v. State, 25 Tex. App. 607, 8 S. W. 807.

2. The indictment is valid, and charges an offense against the laws of this state, under section 4, and subdivision 2 of section 13, of chapter 123 of the Acts of the Thirtieth Legislature, an act to define and regulate the practice of medicine, and, the indictment being valid, in the absence of a statement of facts, if the charge of the court is applicable to any state of facts that might be proven under the allegations, this court will assume that the county court properly submitted to the jury the law of the case. Wright v. State, 37 Tex. Cr. R. 146, 38 S. W. 1004; Jones v. State, 34 Tex. Cr. R. 642, 31 S. W. 644.

The judgment is affirmed.

---

## MISSOURI, K. & T. RY. CO. OF TEXAS v. GROSECLOSE.†

(Court of Civil Appeals of Texas. Jan. 21, 1911. Rehearing Denied Feb. 11, 1911.)

1. ABATEMENT AND REVIVAL (§ 54*)—ACTIONS SURVIVING—INJURY TO REPUTATION.

Rev. St. 1895, art. 3353a, provides that causes of action for injuries, not resulting in death, whether to the health, reputation, or person of the injured party, shall not abate by his death, but shall survive in favor of his heirs and legal representatives. The statute authorized actions for personal injuries resulting in death to be prosecuted by the surviving wife and children. Held, that the statute authorized a recovery of all damages which the injured party, if living, could recover, so that the widow and children of one maliciously prosecuted could recover damages for injury to his feelings, etc., as well as to his reputation.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. § 270; Dec. Dig. § 54.*]

2. HUSBAND AND WIFE (§ 273*)—COMMUNITY PROPERTY—RIGHTS OF SURVIVOR—ACTIONS—PLEADING.

Since damages for injury to the husband's reputation and for mental anguish suffered by the malicious prosecution of a criminal charge were community property, a right of action therefor survived to her as community property on her husband's death, and hence the petition in her action for such damages need not allege that there was no administration on her husband's estate, and no necessity for any.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 273.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

**3. APPEAL AND ERROR (§ 1036*)—HARMLESS ERROR—PARTIES.**

While the widow could have sued alone as community survivor to recover for injury to her husband's reputation and feelings by a malicious prosecution against him, it was not reversible error to allow the children to prosecute the action with her.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4069–4074; Dec. Dig. § 1036.*]

**4. HUSBAND AND WIFE (§ 273*)—COMMUNITY PROPERTY—ACTIONS—DAMAGES.**

In an action by the surviving wife and children for damages to the husband's reputation, and for injury to his feelings by the malicious institution of a criminal charge against him, plaintiffs could not recover damages suffered by themselves, but only those accruing to decedent.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 273.*]

**5. APPEAL AND ERROR (§ 1053*)—HARMLESS ERROR—DAMAGES.**

Any error in an action by the widow and children for damages for injury to the husband's reputation and feelings, etc., by the malicious institution of a criminal charge, in overruling objections to evidence as to damages suffered by plaintiffs, could not have injured defendant, where the court withdrew the question of such damages from the jury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. § 1053;* Trial, Cent. Dig. § 977.]

**6. EVIDENCE (§ 317*)—HEARSAY.**

Evidence in an action for malicious prosecution by causing plaintiff's arrest for embezzlement that W., defendant's special agent, told witness that he had given the matter of the embezzlement as thorough investigation as he could and felt justified in arresting plaintiff, was properly excluded as hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

**7. WITNESSES (§ 286*)—EXAMINATION—REDIRECT EXAMINATION.**

Where defendant attempted to show on cross-examination that plaintiff was a regular gambler, and that no one but regular gamblers played at the place where he had been caught playing, the witness could testify, on redirect examination, that some of the best men of the town had been caught playing poker as plaintiff was.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 286.*]

**8. MALICIOUS PROSECUTION (§ 60*)—ACTIONS—ADMISSION OF EVIDENCE.**

In an action for malicious prosecution by arresting plaintiff, the agent of defendant railroad company, on the charge of embezzlement of funds under the pretense that he had been robbed, testimony by the city marshal that he learned from plaintiff and others in less than 15 minutes after the alleged robbery that two men had robbed the safe, held plaintiff up and taken the money, and that others had seen two men near the place of the robbery, was admissible in evidence to support plaintiff's claim that defendant's agent had not communicated all of the facts to the county attorney in procuring plaintiff's arrest; it appearing that defendant's agent had not informed the county attorney of such facts.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 138–145; Dec. Dig. § 60.*]

**9. EVIDENCE (§ 123*)—RES GESTÆ.**

In an action for malicious prosecution by procuring the arrest of plaintiff, the agent of defendant railroad company, on the charge of embezzling money under the pretense that he had been robbed, testimony was admissible as part of the res gestæ that less than 10 minutes after the alleged robbery plaintiff met witness near the depot and told him that he had been robbed, and asked him to go to the depot and stay until plaintiff could get an officer.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 351–368; Dec. Dig. § 123.*]

**10. MALICIOUS PROSECUTION (§ 72*)—ACTIONS—INSTRUCTIONS.**

In an action for malicious prosecution by causing plaintiff's arrest for embezzlement, the court instructed that if the county attorney advised or caused defendant's agent to make a complaint, but that such agent induced him to do so by false representations, or by failing to lay before him a full and fair statement of the facts known to such agent, and the complaint was made and the prosecution instituted without probable cause and with legal malice, as defined, and the charge of embezzlement was in fact false, the jury should find for plaintiff. *Held*, that the instruction was correct.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. §§ 168–173; Dec. Dig. § 72.*]

**11. HUSBAND AND WIFE (§ 273*)—ACTIONS—INSTRUCTIONS—CONFLICTING INSTRUCTIONS—DAMAGES.**

In an action for damages by a widow and children for maliciously having the husband and father arrested for embezzlement, the court charged that, in assessing plaintiffs' damages, the jury should not consider mental anguish or humiliation suffered by plaintiffs, but only damages sustained by decedent during his lifetime as claimed in the petition, and that any claim for damages other than those sustained by decedent was thereby withdrawn from the jury's consideration. The court also instructed in its general charge that, upon finding for plaintiffs, the jury should allow them such sum as would now, in cash, reasonably compensate them for the injuries, if any, sustained by decedent, considering any loss of time directly resulting from the prosecution of him and the injury to his feelings and reputation, if any, resulting directly from the prosecution and arrest. *Held*, that the first charge did not conflict with the general charge.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 273.*]

**12. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS.**

Special charges requested were properly refused where they were fully covered by the general charge given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**13. HUSBAND AND WIFE (§ 273*)—COMMUNITY PROPERTY.**

Since damages recovered by the widow and children for maliciously instituting a criminal prosecution against the husband and father are community property, the law of apportionment of damages between children does not apply, so that damages recovered will be equally divided between the widow and children.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 273.*]

Appeal from District Court, Hunt County; R. L. Porter, Judge.

Action by W. M. Groseclose, revived after his death by Susie O. Groseclose and others, against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiffs, defendant appeals. Reversed

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

and remanded, unless plaintiffs consent to a reduction of the recovery.

See, also, 110 S. W. 477.

Coke, Miller & Coke and Templeton, Craddock, Crosby & Dinsmore, for appellant. Evans & Mitchell, for appellee.

RAINEY, C. J. W. M. Groseclose sued the Missouri, Kansas & Texas Railway Company of Texas, F. M. Warden, and J. F. Penn for malicious prosecution. The suit was dismissed as to Warden and Penn. A trial was had on February 21, 1907, and judgment rendered against the railway company for $4,500. An appeal was taken, and the judgment was reversed and remanded by the appellate court on April 30, 1908. While the case was pending on appeal, in February, 1908, W. M. Groseclose died. The mandate was returned December 22, 1908, to the district court. At the first term thereafter the death of W. M. Groseclose was suggested, and the cause continued to make parties to the suit. On May 28, 1909, Mrs. Susie O. Groseclose, as wife of W. M. Groseclose and as next friend for three of their children, minors, and P. M. Groseclose and Louise Groseclose, children and adults, filed their petition, and alleged that "plaintiffs here now seek to prosecute this suit as survivors, being the heirs, legal representatives, and surviving wife and children of the said W. M. Groseclose, the cause surviving to them, as claimed and set up in this original petition, above set forth."

The petition alleged, in effect: That W. M. Groseclose, through the procurement of Penn and Warden, was without probable cause charged with embezzlement of money from the railway company. That he was arrested on said charge, and detained overnight and until he could make bond and be released thereon. That Penn and Warden were in the employment of the railway company as special agents, and were fully empowered and authorized by the railway company to make investigations and to institute or cause to be instituted suits, both of a civil and criminal nature, as by them might be deemed for the protection of appellant's property, or for the prosecution of any person who may have been guilty of theft or embezzlement. That Groseclose was 46 years of age, of good character and reputation. That he was not guilty, and his reputation for honesty was ruined, whereby he could not procure employment, and for the balance of his life he suffered great physical and mental pain, anguish of mind, humiliation, and distress caused by the malicious prosecution. Defendant railway company answered by special and general demurrers, the general issue, and plea in abatement as to the right of the wife and children to sue, which latter plea was overruled. A trial resulted in a verdict for the plaintiffs in the sum of $14,000, which was apportioned by the jury as follows: To the wife, $4,000, to Jim Tom Groseclose, $1,000, to Willie Russell Groseclose, Henry Clay, Grace, and Ina Groseclose, each $2,000, and to P. M. and Louise Groseclose, each $500, and judgment entered accordingly—from which the railway company prosecutes this appeal. .

Appellant's first assignment of error is: "The court erred in overruling and in not sustaining the defendant's plea in abatement filed herein on October 4, 1909, wherein it prayed that the cause of action set up in the plaintiff's amended petition be abated, and, in the alternative, that, if the whole of said cause and causes of action be not abated, then that all the causes of action set out in the said petition except that for injury to the reputation of W. M. Groseclose be abated, all as set forth fully and at large in defendant's bill of exceptions No. 1, which is here referred to and made part hereof, because: (1) All of the said causes of action which the said W. M. Groseclose in his lifetime had, if any, as set out in the amended original petition of Susie O. Groseclose and others, did not survive upon the death of the said W. M. Groseclose, but the same abated. (2) If all the said causes of action which the said W. M. Groseclose had, if any, did not abate upon his death, then all of the said causes of action so set out in the said amended petition, except that for injury to the reputation of the said W. M. Groseclose, did abate upon the death of the said W. M. Groseclose." Appellant's contention is: "All of the causes of action which the deceased, W. M. Groseclose, had in his lifetime, except that for injury to the reputation of the said W. M. Groseclose, abated upon his death, and the court erred in not sustaining the plea in abatement to all such causes of action other than that for injury to the reputation of said deceased." There was no error in not sustaining appellant's plea in abatement. Article 3353a, Rev. St. 1895, provides: "Causes of action upon which suit has been or may hereafter be brought by the injured party for personal injuries other than those resulting in death, whether such injuries be to the health or to the reputation or to the person of the injured party shall not abate by reason of his death, nor by reason of the death of the person against whom such cause of action shall have accrued; but in case of the death of either or both, such cause of action shall survive to and in favor of the heirs and legal representatives of such injured party and against the person, receiver or corporation liable for such injuries and his legal representatives; and so surviving such cause may. be hereafter prosecuted in like manner and with like legal effect as would a cause of action for injuries to personal property." When this law was enacted, the statute authorized actions for personal injuries resulting in death by surviving wife and children; hence the exclusion of actions

"other than those resulting in death" by the article heretofore mentioned. Said article embraces all actions for personal injuries other than those resulting in death, and we think it authorizes the survivors to recover all damages which the injured party, if living, would be entitled to, and the survivors are not limited to injury to the reputation, as claimed by appellant.

The second, third, fourth, and fifth assignments of error complain of the court in not sustaining general and special demurrers which attack the legal right of plaintiffs to maintain this suit. The first proposition made is the overruling of a general demurrer is error because the petition does not allege there was no administration on the estate of W. M. Groseclose, deceased, and no necessity therefor. The damages sought to be recovered, if any, were community property of W. M. Groseclose and his wife. The wife having an interest in such cause of action, it survived to her as community property, and, having an interest therein, she was entitled to maintain the suit, and it was not necessary to allege there was no administration on the estate of W. M. Groseclose, nor necessity for any. Telegraph Co. v. Kerr, 4 Tex. Civ. App. 280, 23 S. W. 564. The other proposition is that the children named in the petition were neither necessary nor proper parties to this suit. While we are of the opinion that the wife could have maintained this suit alone, as community survivor, and recovered all the damages accrued, yet allowing the children to prosecute with her as plaintiffs was not such error as will cause a reversal of the case. Faulkenbury v. Wells, 28 Tex. Civ. App. 621, 68 S. W. 327; Railway Co. v. Carwile, 28 Tex. Civ. App. 208, 67 S. W. 160. The foregoing propositions were presented by both general and special exceptions, but we are of the opinion the court did not err in overruling them.

The sixth, seventh, eighth, and ninth assignments of error complain of the overruling of exceptions that were directed to damages that plaintiffs alleged were suffered by them, and did not accrue solely to W. M. Groseclose. These exceptions should have been sustained, but the court did not submit them to the jury, and did directly withdraw them from their consideration, and no injury resulted to appellant thereby. Railway Co. v. Trump, 42 Tex. Civ. App. 536, 94 S. W. 903, 98 S. W. 1101; Railway Co. v. Terhune, 94 S. W. 381.

There is no reversible error in the action of the court in overruling the exceptions as complained of in the tenth, eleventh, twelfth, and thirteenth assignments of error, as the court only submitted as a basis for recovery such damages as were suffered by W. M. Groseclose and for which he was entitled to recover, had he lived.

Complaint is made to the ruling of the court in not admitting the following testimony of J. F. Penn, viz.: "Todd Warden told me that he had given the matter as thorough investigation as he could, and felt perfectly justified in arresting the plaintiff, Groseclose, * * * and, after getting the condition of the station records from the auditors and finding it in very bad condition, Todd Warden wanted to arrest the agent, Groseclose, for robbing himself." The objection to this testimony was that it was hearsay, and therefore not legitimate. The record shows that the latter part of the testimony, to wit, "after getting the condition of the station records from the auditors and finding it in very bad condition, Todd Warden wanted to arrest the agent, Groseclose, for robbing himself," was admitted. The record also shows that Todd Warden was present at the trial and testified. We think the testimony was hearsay and subject to the objection urged, and was properly excluded.

Objection was made to the testimony of Sam Harris, city marshal of Farmersville, on redirect examination, to the effect that some of the best men of Farmersville had been caught playing cards and poker. This was in answer to a question by appellee's counsel: "Is it not true that a great many of the business men in Farmersville did the kind of gaming Groseclose did in the two cases that he was guilty of gaming in that town?" On cross-examination defendant's counsel had attempted to prove that Groseclose was a regular gambler, and that no one but a regular gambler played at the places where he was caught, and said testimony was admitted to rebut defendant's theory that Groseclose was a regular gambler. The tendency of the testimony to rebut the theory of defendant that Groseclose was a regular gambler was slight, but we are inclined to think it was admissible, to be weighed by the jury for what it was worth. The witness Sam Harris was asked by plaintiff's counsel, in reference to the robbery of W. M. Groseclose, in substance, what he had learned with reference to two men being seen in that neighborhood. He answered: "I learned there were two men robbed the safe, held Mr. Groseclose up, and got off with the money." Also: "I learned that Mr. Smith had seen two men there or near there," and "I also learned from Mr. Stamford, he said he met two men on the road from the flour mill going from the west and coming east." This testimony was objected to on the ground that it was hearsay, immaterial, irrelevant, and prejudicial. A bill of exception was taken, to which the court appended the following: "This bill is approved with this explanation: The facts that Harris learned were from W. M. Groseclose in less than 15 minutes after the robbery, and as to what he learned from other parties was at the same time and place, and it was not intended by this evidence to prove these facts, but in order to show that Harris subsequently

informed the special agent of the defendant, and was all admissible in support of plaintiff's allegation that the defendant failed to place before the officers all that it knew, or a fair statement of what it knew, as to whether two strangers or W. M. Groseclose robbed the safe." W. M. Groseclose was appellant's agent at Farmersville, and claimed to have been robbed one night by two men of $700 or $800 while at work in the depot. The defendant's theory was that the claim of Groseclose that he had been robbed was false, and that he had appropriated the money to his own use. Harris had previously testified, in substance, that he learned of the robbery between 8 and 9 o'clock, and went immediately to the depot. Stamford and other parties were there, and Groseclose informed him of the two men doing the robbery. He then investigated the matter, and learned from Stamford and Smith what he stated as above about the two men, and told Penn all about what he had learned before the charge against Groseclose was made. The testimony complained of was to show defendant's agents had been informed as to these circumstances as to the robbery before the charge of embezzlement was made, and bore on the claim of plaintiffs that defendant's agents had not communicated all the facts to the county attorney in procuring the complaint made against Groseclose. This being the object of the testimony, we think it was admissible.

What is here said also applies to the eighteenth assignment of error.

The nineteenth assignment of error is: "The court erred in admitting in evidence over the objections of the defendant the testimony of the plaintiffs' witness Ed Stamford, to the effect that W. M. Groseclose, when he met him east of the depot after the alleged robbery, told him that he had been robbed, and also to go to the depot and stay there until he could get an officer, because the said evidence was hearsay, self-serving, immaterial, and irrelevant as set forth at large in the defendant's bill of exceptions No. 6, which is here referred to and made part hereof." The bill of exceptions, omitting the heading and the signature of the attorneys, is as follows: "Be it remembered that on the trial of the above numbered and entitled cause, while the plaintiffs' witness Ed Stamford was testifying on behalf of plaintiff on his direct examination, having stated that on the night of the alleged robbery of the depot at Farmersville he was walking down the railroad in the direction of the depot, met a couple of men, and, continuing on his journey, after passing them some 200 yards, he met W. M. Groseclose, and that at that time Groseclose was walking pretty peart, was asked this question: Q. What, if anything, did he (meaning Groseclose) say? A. He asked me, says, 'Who is that?' I never spoke right straight, and he said again, 'Who is that?' and I said, 'Ed Stamford.' Whereupon defendant by its counsel objected to the conversation between Stamford and Groseclose at that time as being hearsay, immaterial, and irrelevant, and self-serving, which objections were by the court overruled. The defendant then and there duly excepted, and the witness, continuing his answer, said further: A. * * * He says, 'Is that you, Mr. Stamford?' and I says, 'Yes, sir,' and he says, 'I have been robbed.' Said, 'Will you go to the depot and stay there until I get an officer?' And I told him I could, and I walked as quick as I could, and, when I got there, I stayed there a few minutes, and seen I did not have any business there, and went on to the section house. To which action and ruling of the court in admitting said evidence over the objections of the defendant the defendant then and there duly excepted, and here tenders this its bill of exceptions No. 6, and asks that the same be approved and filed as part of the record in this cause. Approved: ......, Judge 8th District. This bill is approved with this explanation: It was an issue in the case, made by the defendant, as to whether Groseclose was guilty or innocent of the robbery while running for the officers, and the conversation between them was in less than 10 minutes after the robbery. [Signed] R. L. Porter, Judge 8th District." This testimony was in point of time so intimately connected with the transaction in reference to the robbery that it was a part of the res gestæ, and therefore admissible.

The twentieth assignment is: "The court erred in its third paragraph of its charge to the jury, which is as follows: '(3) If you believe from the evidence that defendant, through its representatives, J. F. Penn and F. M. Warden, or either of them, caused, procured, or brought about the making of the complaint against W. M. Groseclose by C. T. Warden, as complained of in the petition, charging W. M. Groseclose with the offense of embezzlement, and you find that W. M. Groseclose was thereby arrested and deprived of his liberty by virtue of a warrant issued thereon, and you find that he was required to enter into bond to await the action of the grand jury of Collin county, and you further find that W. M. Groseclose, in pursuance of the obligation of said bond, made his personal appearance before said grand jury, and that said grand jury failed to indict him, and he was then and there discharged, and if you further find that said prosecution was instituted without probable cause, as defined herein, and if you further find that the said J. F. Penn and F. M. Warden, or either of them, in procuring, causing, or bringing about, if they did, the institution of said prosecution, were actuated by 'malice,' as that term is defined in this charge, and if you further find that the charge of embezzlement against W. M. Groseclose was, in fact, false, and you further

find that by reason of said prosecution, arrest, and imprisonment W. M. Groseclose was caused to suffer and sustain loss and injury, as complained of and set forth in the plaintiffs' petition, then you will find for the plaintiffs. But, unless you so believe, you will find for the defendant." The objection to this charge is that there is no evidence that F. M. Warden either advised, caused, procured, or in any manner brought about the making of said complaint. We do not concur in this contention. F. M. Warden and J. F. Penn were the detectives of appellant. Groseclose had informed Warden of the robbery and the circumstances thereof. Warden reached there Sunday morning and began an investigation. Penn reached there on Monday morning, and after that Penn was the leading spirit in the investigation, but, considering all the facts and circumstances connected with the matter, they show that Warden was co-operating and acting with Penn in the matter, and the court was authorized in giving the charge.

Appellant complains of the following paragraph of the court's charge, to wit: "But if you find that said assistant county attorney advised or caused C. T. Warden to make a complaint, and caused the institution of said prosecution, but if you further find that said agents and servants of the defendant induced him, the said assistant county attorney, to do so by false representations to him, if there were any representations, and if they were false, or if you find that the said Penn and F. M. Warden, acting within the scope of their authority as defendant's agents, induced him, the assistant county attorney, to do so by failing to lay before him a full and fair statement of all the facts known to them, and you further find that said complaint was made and the prosecution instituted without probable cause and with legal malice, as above defined, and you find that the charge of embezzlement against Groseclose was, in fact, false, then you will find for the plaintiffs." The court instructed the jury, in effect, that, if defendant's agents had made to the county attorney a full and fair statement of the facts and that said county attorney had acted upon his own judgment in causing the complaint to be made and was not influenced so to do by Penn or Warden, to find for defendant. The paragraph complained of correctly presents the law governing this cause. It requires the jury to find the want of probable cause and the existence of malice, and conformed to the law announced in this case on the former appeal in an able opinion by Mr. Chief Justice Wilson, reported in 110 S. W. 477. When the charge of the court is considered as a whole, it fully and fairly presented the case to the jury.

The following special charge requested by plaintiff and given by the court is assigned as error, to wit: "You are also instructed that, if you find for the plaintiffs on the issue submitted to you in the charges, then, in assessing their damages, if any, you will not take into consideration any mental anguish, distress of mind, or humiliation suffered by either of the plaintiffs in this case, on account of the prosecution, but they can recover only, if at all, damages sustained by W. M. Groseclose in his lifetime, as claimed and set forth in the petition, and any allegations in the petition filed by plaintiffs, setting forth a claim for damages to themselves other than those sustained by W. M. Groseclose in his lifetime, are hereby withdrawn from your consideration." The criticism of this charge is that it is contradictory of and in conflict with the court's main charge, in that it authorizes the jury to consider elements of damage which are not legal elements of damage. The court in its general charge instructed the jury that: "If you find for the plaintiffs, you will allow them such sum as will now, in cash, reasonably compensate them for the injuries, if any, he, the said W. M. Groseclose, sustained, taking into consideration the loss of time, if any, he sustained from the 19th day of December, 1905, to the date of his death in January, 1908, which you may find was the direct and proximate result of said prosecution, if it was, and the injury, if any, to his feelings, name, fame, and reputation that he sustained, if he did, as a direct and proximate result of said prosecution, arrest, and imprisonment." The special charge did not conflict with the general charge. It limits a recovery to the "damages sustained by W. M. Groseclose in his lifetime as claimed and set forth in the petition," and excludes all damages to plaintiffs other than those sustained by W. M. Groseclose. The charge was more favorable to defendant, as it emphasizes the general charge, and tended to impress the jury with the proposition that damages other than those sustained by W. M. Groseclose could be recovered by them.

The twenty-fourth and twenty-fifth assignments of error, complaining of the refusal of the court to give special charges, is not tenable, as said charges were fully covered by its general charge. Complaint is made that the court erred in not granting the motion for a new trial, as the verdict is not supported by the evidence. There was a sharp conflict in the testimony upon all the important issues raised, and the testimony is such that the jury would have been justified in finding for the defendant, while, on the other hand, it was sufficient to support a verdict for the plaintiffs.

While we think a verdict for plaintiffs was warranted, we think the verdict of $14,000 is subject to the objection of appellant that it is excessive, and should be reduced to $8,000. If appellees will within 15 days enter a remittitur of $6,000, we will reform the judgment, and here render a judgment for $4,-000 for Mrs. Susie O. Groseclose and $4,000 for the children, to be divided equally be-

tween them, as it is community property and the law of apportionment of damages between children does not apply in this case; otherwise the judgment will be reversed and cause remanded.